IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANICE T.[1],

        Plaintiff,

v.

NANCY BERRYHILL,
Commissioner of the Social Security
Administration,

        Defendant.

Civ. No. 3:17-cv-01166-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Janice T. brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

    The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred in evaluating the opinions of Dr. Thomas Hickerson, M.D., and Barbara Majors, M.S.W. and Q.M.H.P.; and (2) whether the ALJ erred in evaluating Plaintiff's credibility.

    Because the ALJ articulated sufficient reasons supported by substantial evidence in her evaluation of the respective evidence and, to the extent that she erred, such errors were harmless, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for DIB on March 31, 2014, alleging disability since August 18, 2013. Tr. 236.[2] Plaintiff subsequently amended her alleged disability onset to September 15, 2013. Tr. 234–35. Plaintiff also applied for Supplemental Security Income on April 1, 2014. Tr. 227. Both claims were denied initially, tr. 158, 163, and upon reconsideration, tr. 173, 176. Plaintiff timely requested a hearing before an ALJ , tr. 184, and appeared before the Honorable Linda Thomasson on November 2, 2016, tr. 36. ALJ Thomasson denied Plaintiff's claim by a written decision dated January 30, 2017. Tr. 17–19. Plaintiff sought review from the Appeals Council, tr. 8, and was denied, tr. 1, rendering the ALJ's decision final. Plaintiff now seeks judicial review.

Plaintiff, born on October 26, 1959, tr. 91, completed three years of college and worked as a journalist, a United Parcel Service "load planner," and a program analyst for Alaska Air between 2003 and 2013. Tr. 254. Plaintiff was fifty-three at the time of alleged disability onset, tr. 91, and fifty-seven at the time of her hearing, *see* tr. 91, 36. Plaintiff alleges disability due to post-concussive trauma, vertigo, headaches, loss of concentration and short-term memory, dizziness and nausea, cerebral cyst, light sensitivity, inability to handle or work under stress, loss of intellectual ability to process information, and dexterity difficulty. Tr. 253.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record, ECF No. 14, provided by the Commissioner.

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## **DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

Plaintiff contends that the ALJ's decision contains legal errors and is not supported by substantial evidence. Pl.'s Brief, ECF No. 19, 2. Specifically, Plaintiff argues that the ALJ erred

in evaluating (1) the opinions of Dr. Thomas Hickerson, M.D., and Barbara Majors, M.S.W. and Q.M.H.P., and (2) Plaintiff's credibility. *Id.*

## I. Dr. Hickerson's Opinion

Dr. Thomas Hickerson, Plaintiff's primary care provider, submitted a letter dated January 26, 2016, tr. 627, and a Physical Capacity Statement form dated July 6, 2016, tr. 910. Dr. Hickerson's letter stated that Plaintiff was "under [a] tremendous amount of stress" and experiencing chest pain and shortness of breath. Tr. 627. Plaintiff's family has a history of heart problems, and she has recurring headaches and dizziness that Dr. Hickerson opined could be stress- or endolymphatic hydrops-related. *Id.* Dr. Hickerson explained that Plaintiff was diagnosed with and on medication for anxiety disorder and attention deficit disorder, had a difficult fracture in her right hand with a recent surgery history, and suffered from a host of problems including chronic fatigue, a cerebellar brain cyst, and reflux. *Id.* Dr. Hickerson stated that he was especially concerned with Plaintiff's chest pain, palpitations, and shortness of breath. *Id.* He recommended she avoid stress and anxiety until further evaluation. *Id.*

On the Physical Capacity Statement form, Dr. Hickerson indicated that Plaintiff must rest and avoid most activity and basic functions during vertigo attacks, extreme headaches, and nausea. Tr. 910. He indicated Plaintiff's ability to sit, stand, or walk was variable; she could walk up to one city block sometimes and none other times. *Id.* Dr. Hickerson also indicated that Plaintiff needed to elevate her lower extremities with prolonged sitting and must lie down after sitting for too long. *Id.* Due to this and "random severe attacks" from Plaintiff's "permanent severe vertigo and TBI-Hydrops," Dr. Hickerson opined that Plaintiff cannot work or hold a

sedentary job. *Id.* Dr. Hickerson stated that Plaintiff "can't even do anything for thirty minutes," depending on her vertigo, pain, and post-traumatic stress disorder (PTSD). *Id.*

Dr. Hickerson further stated that Plaintiff cannot work without resting for an eight-hour work day and would need to take unscheduled breaks. Tr. 911. He attributed Plaintiff's need to rest to "severe vertigo," short-term memory loss, headaches, pain, stress, PTSD, back and wrist injuries, arthritis, and cyst. *Id.* Dr. Hickerson stated that these breaks would occur ten times per day for fifteen minutes to two hours and would require Plaintiff to lie down. *Id.* Dr. Hickerson also said Plaintiff must take four naps per day. *Id.*

Dr. Hickerson stated Plaintiff could bend at the waist occasionally[3] but not "at the moment" due to her back injury. Tr. 911. Dr. Hickerson indicated that Plaintiff could not squat, crawl, climb, grasp repetitively, push or pull with her hands repetitively, push or pull with her feet repetitively, crouch, balance, or stoop. Tr. 911–12. Dr. Hickerson indicated that Plaintiff could reach overhead with arms a little, engage in simple grasping occasionally, engage in gross manipulation occasionally but not much, operate foot pedals occasionally, and twist occasionally but not much. Tr. 912. Dr. Hickerson also indicated that Plaintiff could occasionally lift ten pounds or less. *Id.* Dr. Hickerson stated that stress played a big role in Plaintiff's condition, also noting PTSD, brain cyst, hydrops, and TBI. *Id.* Dr. Hickerson then indicated that Plaintiff is incapable of working at even a low stress job due to vertigo, headaches, and PTSD. *Id.*

Dr. Hickerson stated that Plaintiff experiences symptoms during more than two-thirds of the day and is likely to have more than two days per month where her condition would render her absent from work. Tr. 912–13. Dr. Hickerson explained that Plaintiff had a combination of

---

[3] The form defines "occasionally" as one-third of or 2.6 hours per day. Tr. 912.

5 – OPINION AND ORDER

disabilities, was struggling with basic daily functions, and was getting worse. Tr. 913. Lastly, Dr. Hickerson marked Plaintiff's prognosis "poor" and stated that most of Plaintiff's impairments are "permanent and severely disabling." *Id.*

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Bayliss* , 427 F.3d at 1216 (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Here, the ALJ gave Dr. Hickerson's opinion little weight because she found his letter was unsupported by explanation and his recommendation was unclear and lacked functional limits. Tr. 27. The ALJ also noted that the "extreme limitations" Dr. Hickerson posited seemed to be based on Plaintiff's subjective input as opposed to "the diagnostic record and objective findings." *Id.* Specifically, the ALJ stated that there was no objective basis for Plaintiff's vertigo, treatment for her severe spine impairment was conservative, and she worked on her farm for part of the relevant period. *Id.*

Conversely, the ALJ gave some weight to the opinions of two State agency medical evaluators. Tr. 26. Dr. Marin Lahr, M.D., reviewed the medical evidence of record on September 4, 2014 and concluded that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently, and could occasionally climb, tr. 86, and perform left overhead reaching, tr. 87. Dr.

Lahr further concluded that Plaintiff should avoid concentrated exposure to noise and could not be exposed to heights or hazards due to dizziness and headaches. Tr. 88.

Dr. Thomas Davenport, M.D., reviewed the medical evidence of record on February 17, 2015 and affirmed Dr. Lahr's opinion. Tr. 135–37. The ALJ gave significant weight to both opinions regarding left overhead reaching, postural limitations, and hazards, and less weight with regard to noise exposure, lack of right hand manipulative limitations, and Plaintiff's exertional abilities (the latter of which, the ALJ wrote, they overestimated). Tr. 26.

Because Dr. Lahr and Dr. Davenport's opinions contradict that of Dr. Hickerson, the ALJ needed only provide specific and legitimate reasons supported by substantial evidence to properly reject Dr. Hickerson's opinion. *See Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830–31). This Court finds that the ALJ did so here.

## A. Lack of An Objective Basis for Plaintiff's Vertigo

There are three alleged bases for Plaintiff's vertigo: her brain cyst, neck injury, and/or potential endolymphatic hydrops. The ALJ found that Dr. Hickerson's diagnosis of vertigo was not objectively supported by the record. Tr. 27. Plaintiff contends that her vestibular test results, cyst, and neck problems provide an objective basis for the diagnosis beyond Plaintiff's subjective complaints.. Pl.'s Brief, ECF No. 19, 9. This Court agrees with Defendant that the ALJ properly found Dr. Hickerson's opinion to be based on Plaintiff's subjective input and lacking in objective support. *See* Def.'s Brief, ECF No. 22, 12.

A clinical vestibular lab report dated April 16, 2012 listed Plaintiff's diagnoses as unspecified labyrinthine fistula and vestibular active Meniere's disease. Tr. 375. However, the interpretation in the same report said "electrocochleography would *support* a diagnosis of

endolymphatic hydrops on the right side." Tr. 379 (emphasis added). Indeed, Dr. Juliana Lockman, M.D., wrote in an October 9, 2013 report following a neurological visit with Plaintiff that testing on April 16, 2012 revealed "possible" hydrops on Plaintiff's right side. Tr. 363. Further, according to Dr. Jeffrey Brown, M.D., testing on October 31, 2013 revealed no evidence of a condition that could cause vertigo symptoms, such as endolymphatic hydrops/Meniere's disease or superior semicircular canal dehiscence. Tr. 402.

As for Plaintiff's cyst and neck pain, Dr. Brown opined on October 31, 2013 that Plaintiff "probably" had cervical vertigo but that it was "reasonable to treat" her endolymphatic hydrops. Tr. 395. Dr. Brown prescribed 25 mg of hydrochlorothiazide for hydrops and small doses of diazepam for Plaintiff's "low grade background disequilibrium and dizziness." Tr. 395–96. Dr. Hickerson reported on March 13, 2014 that Plaintiff's vertigo "*may* be related to neck injury or cerebellar cyst," and wrote that she had "chronic neck pain *with associated* vertigo." Tr. 412, 612 (emphasis added). Dr. Hickerson wrote on February 25, 2016 that Plaintiff's cyst "*may*" contribute to or play a role in her vertigo because of its location. Tr. 746 (emphasis added).

There is no objective evidence in the record to suggest that hydrops, a neck injury, or a brain cyst provide a basis for Plaintiff's vertigo, alone or together. Rather, the record is replete with words like "possible," "may," and "probably." Moreover, Dr. Brown regarded Plaintiff's vertigo as "reasonable to treat," tr. 395, and Plaintiff reported "significant improvement" in September 2014, tr. 550. Dr. Brown therefore declined to schedule Plaintiff a follow-up visit, noting that she had been stable for seven months prior. *Id.* For these reasons, the ALJ properly concluded that Dr. Hickerson's opinion regarding limitations due to vertigo was not supported by objective evidence in the medical record.

### B. Conservative Neck Treatment

Second, Plaintiff argues that the ALJ improperly discounted her vertigo symptoms because Plaintiff took a conservative approach to her neck treatment. Pl.'s Brief, ECF No. 19, 10. Despite the fact that Dr. Hickerson suggests extreme exertional and postural limitations on his form, Plaintiff relied on a course of Tylenol or ibuprofen to treat her pain, and her symptoms were found to be stable with treatment. *See* tr. 51, 954; Def.'s Brief, ECF No. 22, 13. This is sufficient evidence in the record for the ALJ to limit her reliance on Dr. Hickerson's account of extreme limitations.

Plaintiff points to her January 11, 2012 MRI, which identified some degenerative changes and foraminal narrowing. Tr. 355, 641. The ALJ acknowledged that Plaintiff has a "severe spine impairment." Tr. 27. But again, there is no objective evidence that Plaintiff has cervical vertigo or that her neck injury is the cause of her vertigo symptoms. *See* tr. 395, tr. 412.

### C. Plaintiff's Work on Her Farm

Third, Plaintiff contends that the work she did on her property during the relevant period does not undermine Dr. Hickerson's medical opinion. Pl.'s Brief, ECF No. 19, 10. The ALJ found that Plaintiff's time spent "taking care of farm animals" and "moving large hay bales" for part of the adjudicative period was inconsistent with the limitations indicated by Dr. Hickerson. Tr. 27. This Court agrees with Plaintiff but finds that the ALJ's error is harmless.

Plaintiff lives on a four and one-half-acre farm and has ten to twelve dwarf goats, approximately twenty free range chickens, a dog, and two barn cats. Tr. 54. Plaintiff's animals appear to be largely self-sufficient. Plaintiff testified that they take care of themselves and have areas to go in and out of. Tr. 55. Plaintiff feeds the animals scraps and occasionally grain. *Id.*; tr.

64. Plaintiff's pastor's wife helps her feed the animals in the winter. Tr. 64. Plaintiff does not milk the goats and has used a breast pump for them in the past because her hands hurt. Tr. 55–56.

Plaintiff admittedly performs chores on her property but stated she is unable to work for more than twenty to, at most, thirty minutes at a time before having to rest. Tr. 543. Plaintiff complained to Dr. Hickerson that she experienced multiple episodes of vertigo and fatigue after feeding the animals, tr. 768, and has sustained injury while doing other chores. For example, on or around April 13, 2018, Plaintiff was pulling an eighty-pound bale of hay when she fractured her left rib and sprained and strained her left shoulder and upper arm. Tr. 410. On September 19, 2015, Plaintiff was injured again when she fell because a cow bumped into her while she was working on her barn. Tr. 657. Plaintiff was diagnosed with a closed nondisplaced fracture of the middle third of her right wrist scaphoid bone, right hand pain, and a finger abrasion. Tr. 658. Plaintiff also reported increased hand and wrist pain from attempting to cut branches from a tree. Tr. 936. Plaintiff surely cannot be deemed capable of doing activities that leave her injured.

As explained above, Dr. Hickerson asserted that Plaintiff cannot do anything for thirty minutes, tr. 910, faces serious physical limitations, *see* 911–12, can only occasionally lift ten pounds or less, tr. 912, and struggles with basic daily functions, tr. 913, among other things. Although these assertions may lack an objective basis in the record, they are in line with the limited nature of Plaintiff's farm-related activities. Therefore, the ALJ erred in finding that that Plaintiff's work on her farm was inconsistent with Dr. Hickerson's assertions.

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Because the ALJ had

other specific and legitimate reasons supported by substantial evidence to reject Dr. Hickerson's opinion (see above and below), this error is harmless.

**D. Weighing of Dr. Hickerson's Opinion**

Lastly, Plaintiff contends that the ALJ failed to properly weigh Dr. Hickerson's opinion. Pl.'s Brief, ECF No. 19, 11. Specifically, Plaintiff argues that Dr. Hickerson was Plaintiff's treating primary care physician prior to and throughout the adjudicative period, referred her to specialists, reviewed her reports, evaluated her diagnostic images and vestibular testing, and provided a supported opinion. *Id.* Defendant counters that the ALJ properly discussed Dr. Hickerson's opinion, weighed it in light of the overall record, and relied on his treatment records. Def.'s Brief, ECF No. 22, 15. This Court agrees with Defendant.

An ALJ must weigh the following factors when considering medical opinions: (1) whether the source has an examining relationship with claimant; (2) whether the source has a treatment relationship with claimant; (3) supportability (as shown by relevant evidence and explanation); (4) consistency with the record as a whole; (5) specialization; and (6) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 404.1527(c)(1)–(6).

Here, Plaintiff is correct that Dr. Hickerson was heavily involved in Plaintiff's care. However, this Court agrees with the ALJ that the extreme limitations Dr. Hickerson indicated appear to be based on Plaintiff's subjective input rather than the diagnostic record and objective findings. *See* tr. 27. For example, Dr. Hickerson said that Plaintiff could not do anything for thirty minutes, tr. 910, struggled with "basic daily functions," and was getting worse, tr. 913. Dr. Hickerson attributed Plaintiff's condition to stress, PTSD, brain cyst, hydrops, and TBI. Tr. 912.

Dr. Hickerson also said that Plaintiff's vertigo, headaches, and PTSD would prevent her from working at even a low stress job. *Id.*

Contrary to Dr. Hickerson's assertions, Plaintiff's testimony described more than thirty minutes of activities and demonstrated that she can perform many basic daily functions. Plaintiff testified that, on a good day, she makes breakfast, takes her pills, feeds her dog and cats, heats up water and bathes herself, and can drive herself to the grocery store, doctor, and to pick up fruit. Tr. 56–57. After that, Plaintiff takes a nap for "at least a couple of hours" then will eat, collect eggs, and go to an appointment if she has one. Tr. 57.

Furthermore, as explained above, there is no objective medical evidence that Plaintiff's limitations are as severely limiting as Dr. Hickerson suggests. The record contains only speculative bases for Plaintiff's headaches and vertigo symptoms. *See* tr. 363, 379, 395, 402, 412. And again, Plaintiff treats her head, back, and neck pain with Tylenol or ibuprofen. Tr. 51, 954. Moreover, Dr. Brown said Plaintiff's vertigo was "reasonable to treat," tr. 395, and she displayed "significant improvement" by September 2014, requiring no follow-up appointments, tr. 550. As for Plaintiff's stress and PTSD, nothing in the record indicates that Plaintiff cannot work at a low stress job. Because Dr. Hickerson's opinion lacks supportability and consistency with the other evidence in the record, the ALJ properly weighed Dr. Hickerson's opinion.

Therefore, this Court finds that the ALJ gave specific and legitimate reasons supported by substantial evidence in giving Dr. Hickerson's opinion little weight.

**II. Ms. Majors's Opinion**

Barbara Majors, M.S.W. and Q.M.H.P, is Plaintiff's primary mental health therapist and has met with Plaintiff at least once monthly since October 8, 2015 (two years after Plaintiff's

alleged onset date). Tr. 904. Ms. Majors submitted a letter, *id.*, and a Mental Residual Functional Capacity (MRFC) Assessment form, tr. 906, both dated May 26, 2016.

Ms. Majors stated in her letter that Plaintiff suffered from PTSD and Unspecified Depressive Disorder and reported a variety of mental health-related symptoms. Tr. 904. Ms. Majors wrote that Plaintiff attended counseling sessions and participated in treatment, but her clinic did not prescribe any medication for her at that time. *Id.* Ms. Majors opined that Plaintiff's prognosis was positive but her mental health impairments are unlikely to improve. Tr. 905. Moreover, Ms. Majors stated that it is unlikely that Plaintiff will develop skills to more effectively live with her impairments than before, and she will continue to struggle with them. *Id.*

On the MRFC form, Ms. Majors rated some of Plaintiff's psychological impairments as moderately limited and others as markedly limited. *See* tr. 906–07. For example, Ms. Majors indicated that Plaintiff was markedly limited in her understanding, memory, and ability to concentrate for very long, maintain a routine, be punctual without supervision, make simple work-related decisions, accept instructions or handle criticism, respond appropriately to work setting changes, travel in unfamiliar places, and use public transportation. *Id.* Ms. Majors also indicated that Plaintiff is markedly limited in her ability to complete a normal workday and workweek and perform consistently without an unreasonable number or length of rest periods. Tr. 907.

The Social Security Administration regulations differentiate between "acceptable medical sources" and "nonmedical sources." 20 C.F.R. §§ 404.1502(a) and (e), 416.902(i) and (j) (2017). Social welfare personnel are "nonmedical sources." 20 C.F.R. §404.1502(e)(3). An ALJ may

reject opinions from "other" sources if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citations omitted).[4]

Here, the ALJ gave Ms. Majors's opinion little weight because she found it was not supported with explanation and failed to "address functional limits from identified mental medically determinable impairments." Tr. 27. The ALJ also found that Ms. Majors's opinion was inconsistent with acceptable medical sources' opinions, namely those of Dr. Scott Kaper, Ph.D. (an examining psychologist) and the State's psychological evaluators (Dr. Joshua Boyd, Psy.D. and Dr. Winifred Ju, Ph.D.). *Id.* The ALJ gave Dr. Boyd and Dr. Ju's opinions great weight because they reviewed the medical evidence in the record, explained the bases for their opinions, and expressed opinions that were consistent with the medical evidence. Tr. 26.

Plaintiff argues that the ALJ failed to address Ms. Majors's letter and maintains Ms. Majors's opinion was not inconsistent with Dr. Kaper's. Pl.'s Br., ECF No. 19, 14. Plaintiff also points out that Dr. Boyd reviewed Plaintiff's record prior to her beginning mental health treatment and Dr. Wu reviewed only one more piece of evidence than Dr. Boyd. *Id.* at 15. This Court agrees with Defendant that the ALJ provided two germane reasons for rejecting Ms. Majors's opinion. *See* Def.'s Br., ECF No. 22, 16.

First, Ms. Majors's letter does not adequately explain the assertions she made on the MRFC form. Ms. Majors described Plaintiff's diagnoses, reported symptoms, treatment, and prognosis. Tr. 904–05. However, the ALJ was correct that Ms. Majors failed to pinpoint any "medically determinable impairments" underlying the wide swath of limitations she indicated on the MRFC form. *See* tr. 27, 906–07. Put differently, the letter and the form do not add up.

---

[4] The regulations previously categorized sources as "acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513(a) and (d) (current through March 27, 2017) (current version at 20 C.F.R. § 404.1513 (2017)). Accordingly, Ninth Circuit case law refers to "other sources."

Second, Ms. Majors's opinion conflicts with those of examining psychologist Dr. Kaper and state psychological evaluators Dr. Boyd and Dr. Ju. Dr. Kaper assessed Plaintiff on August 22, 2014. Tr. 535. Dr. Kaper noted that Plaintiff was "adequately engaged with the testing" and, although she grew frustrated with her performance, she declined to take a break after the first ninety minutes of the interview. Tr. 540–41. In fact, Plaintiff did not take a break until three-and-a-half hours after first filling out the paperwork, when she rose to use the bathroom and said she was "really dizzy." Tr. 541. Plaintiff displayed average intellectual functioning. *Id.* Dr. Kaper explained that Plaintiff's test performance indicated mildly slowed processing speed and some difficulty with un-cued free recall of verbal and visual information, but that it improved to above average with cues. Tr. 545. Dr. Kaper observed that Plaintiff showed "solid stamina" throughout testing, far beyond the twenty to thirty minutes she estimated she could focus at one time. *Id.*

Dr. Kaper further stated that Plaintiff's testing was uniformly superior to how she described her everyday functioning. Tr. 545. He opined that "Dr. Brown's summaries suggest at minimum great caution about [Plaintiff's] somatic complaints." *Id.* Dr. Kaper ultimately diagnosed Plaintiff with adjustment disorder—in part because she had struggled to ask others for help—and noted that it may play into Plaintiff's presentation of her somatic symptoms, causing her to describe them with "sufficient intensity to warrant the overarching help she needs." *Id.*

Dr. Kaper's assessment contrasts starkly with the excessive understanding, memory, and stamina limitations Ms. Majors indicated on the MRFC form. Likewise, Dr. Boyd concluded in his September 3, 2014 analysis that the totality of the evidence showed that Plaintiff's subjective complaints of cognitive difficulties were unsupported by objective evidence and contradicted by her test performance. Tr. 83. Dr. Boyd found no evidence to support the limitations on the

MRFC form; only mild findings that would not substantially impact her ability to function. *Id.* Dr. Boyd categorized Plaintiff's mental limitations as "non-severe." *Id.* Dr. Ju came to the same conclusion in an analysis dated February 18, 2015. Tr. 133. Plaintiff's contention that Dr. Boyd and Dr. Ju reviewed an incomplete record is not dispositive because the ALJ reviewed the entire record and neither Plaintiff nor Ms. Majors pointed to any evidence that would support the assertions on the MRFC form.

Because Ms. Majors's opinion lacks explanation and is contrary to that of Dr. Kaper, Dr. Boyd, and Dr. Ju, the ALJ provided germane reasons for rejecting Ms. Majors's opinion.

For the above reasons, the ALJ did not err in evaluating Dr. Hickerson and Ms. Majors's opinions.

### III. Plaintiff's Credibility

Plaintiff contends that the ALJ improperly rejected her testimony. Pl.'s Br., ECF No. 19, 16. Specifically, Plaintiff argues that the ALJ merely summarized the medical evidence without identifying which evidence detracted from Plaintiff's symptom allegations. *Id.* at 17. Plaintiff also argues that her activities are not transferable to a work setting. *Id.* at 18. Defendant counters that the ALJ reasonably determined Plaintiff was not a fully reliable source of information given the objective findings, activities evidence, treatment record, and Plaintiff's work history with her impairment. Def.'s Br., ECF No. 22, 3–4. This Court agrees with Defendant.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. Where there is objective medical evidence in the record of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged and there is no affirmative evidence of malingering, the

ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989)).

The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record," this Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Bunnell v. Sullivan,* 947 F.2d 341, 345–46 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify

what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick,* 157 F.3d at 722 (citations and internal quotation marks omitted). However, even when an agency "explains its decision with 'less than ideal clarity,'" this Court must uphold it "if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (citations omitted).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce" her alleged symptoms, but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Therefore, the ALJ concluded that Plaintiff's statements affected her ability to work only to the extent that they could "reasonably be accepted as consistent with the objective medical and other evidence." *Id.*

The ALJ first discussed Plaintiff's motor vehicle accident and summarized the objective medical evidence alongside Plaintiff's statements surrounding her left shoulder, headaches, vertigo, hearing, thumbs, right wrist, left foot, and spine. Tr. 22–25. For example, the ALJ stated that x-rays of Plaintiff's left shoulder from April 2014 showed only mild degenerative changes, and that she was diagnosed with a sprain and strain. Tr. 23. The ALJ then noted that Plaintiff reported reaching into a shed to lift a chair out in May 2016. *Id.* The ALJ next stated that Plaintiff reported daily headaches, dizziness, and forgetfulness after her motor vehicle accident, but that an MRI showed normal brain parenchyma and no acute stroke, bleed, or mass. *Id.* The ALJ also explained that Plaintiff's cyst remained unchanged and Dr. Brown noted that most of her cysts were preexisting, possibly for ten years prior. *Id.*

The ALJ then summarized the objective medical findings surrounding Plaintiff's vertigo and noted that an examination revealed tandem walking without difficulty, normal gait without

signs of imbalance, and no gait deviation with eyes closed. Tr. 23. The ALJ contrasted this with Plaintiff's January 2014 claim that she had random episodes of instability sensations. Tr. 23–24. The ALJ also noted that in September 2014, Plaintiff's symptoms had significantly improved, her gait was normal, and Dr. Brown declined to schedule her a follow-up appointment. Tr. 24.

The ALJ did not explicitly state why she found that these portions of Plaintiff's testimony were inconsistent with the objective medical evidence. In *Brown-Hunter*, the Ninth Circuit reasoned that an ALJ's statement of her non-credibility conclusion and summary of the medical evidence was insufficient for meaningful review because she did not specifically identify inconsistencies between the claimant's testimony and the record. 806 F.3d at 494. Unlike the ALJ in *Brown-Hunter*, however, the ALJ here specifically identified inconsistencies between the Plaintiff's testimony and the record by comparing objective medical findings to each of Plaintiff's claims. This is more than a general finding followed by a summary of medical evidence. Therefore, although the ALJ analyzed Plaintiff's credibility with "less than ideal clarity," this Court can reasonably discern the ALJ's path and must uphold her decision. *See Molina*, 674 F.3d at 1121 (citations omitted).

The ALJ also found that Plaintiff's "allegations of disabling symptoms" were inconsistent with her activities of daily living. Tr. 25. An ALJ may rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

Here, the ALJ stated that Plaintiff reported regular exercise in October 2013, pulled an eighty-pound bale of hay four days prior, lives alone, watches her granddaughters once a week,

makes her own meals, does laundry, drives, shops, goes to church twice a month, has farm animals, can carry twenty to twenty-five pounds of feed for her animals on good days (though much less on bad days), reported working in her barn in September 2015, feeds and checks on her animals, and works on various projects around her farm. Tr. 25. The ALJ again failed to explain exactly how these activities were inconsistent with Plaintiff's allegations of disabling symptoms. *See id.* Still, the ALJ pointed to specific facts in the record that, on their face, are largely inconsistent with Plaintiff's account of her symptoms.

The ALJ's analysis is misleading, however, to the extent that she mentioned Plaintiff's farm work. As previously discussed in this Opinion, Plaintiff's animals require very little care, *see* tr. 55, 64, and she sustained injury on both of these occasions, *see* tr. 410, 657–58, 936. Therefore, it is disingenuous to suggest that Plaintiff is capable engaging in these activities. Regardless, Plaintiff is largely self-sufficient and admittedly engages in various daily activities. Given the record as a whole, the ALJ reasonably determined that many of Plaintiff's statements are inconsistent with her daily activities, thereby undermining her credibility.

Therefore, the ALJ did not err in evaluating Plaintiff's credibility.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 16th day of October, 2018.

_____
**Michael J. McShane
United States District Judge**